

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 22, 2021

**BY ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Mattie Cirilo,* **19 Cr. 833 (SHS)**

Dear Judge Stein:

    The Government respectfully submits this letter in connection with the sentencing of Mattie Cirilo ("Cirilo" or the "defendant"), currently scheduled for June 29, 2021, at 4:00 p.m. In connection with sentencing, the Probation Office has determined that the applicable Guidelines range is 57 to 71 months' imprisonment (*See* Presentence Report dated April 30, 2021 ("PSR") ¶ 72) and recommends that the defendant receive a sentence of 366 days' imprisonment. (PSR p. 24). As set forth in the parties' plea agreement dated January 11, 2021 (the "Plea Agreement"), the Government submits that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is 41 to 51 months' imprisonment (the "Stipulated Guidelines Range"). For the reasons set forth below, the Government respectfully submits that a sentence below the Stipulated Guidelines Range is appropriate in this case.

    **I.**    **Background**

    **A. Role in the Offense**

    Since early 2016, the Government, in partnership from the New York City Police Department ("NYPD") and Homeland Security Investigations ("HSI") has been investigating a large-scale telemarketing scheme targeting elderly and vulnerable victims (the "Victims") throughout the United States. As the Court learned while presiding over the related case (and trial) in *United States v. Ketabchi*, 17 Cr. 243 (SHS), Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on false promises made by the *Ketabchi* defendants that the Victims would earn money through an "online business" created and managed by those defendants and their co-conspirators (the "Business Opportunity Scheme"). In fact, the businesses did not exist, and the Victims never made any money.

Rev. 07.20.2016

In the *Ketabchi* case, the Government prosecuted William Sinclair and Michael Finocchiaro for their role in operating Olive Branch Marketing, which sold business opportunity products, and later Consumer Shield, which convinced Victims of the Business Opportunity Scheme to spend additional money on debt relief products. In mid-2017, following the March 2017 arrests of Sinclair and Finocchiaro, HSI conducted a search at the home of Mattie Cirilo and her co-defendant and husband, Derrek Larkin. As the 2017 search confirmed, Cirilo had previously worked for Olive Branch where she was primarily responsible for setting appointments for sales calls, and did not appear to have full visibility into the fraudulent scheme by virtue of Olive Branch's separation of its administrative staff from the sales floor. While the Government was aware that Larkin had worked as a salesperson at Olive Branch as well as Consumer Shield, Larkin was not charged in the *Ketabchi* case.

Following the resolution of the *Ketabchi* case in late 2018, the Government's investigation shifted to those telemarketing sales floors that continued to operate in the New York and New Jersey area despite the *Ketabchi* case, including Corporate Development Center ("CDC") and Alliance Education ("Alliance" and, collectively "CDC/Alliance"), sales floors run by Joseph Ciaccio and Joseph Minetto, among others. In January 2019, HSI executed a search warrant at the CDC/Alliance office in Englewood, New Jersey, during which search HSI collected paper documents and electronic devices from the employees who were present, including Cirilo. Evidence collected during the search revealed that as of January 2019, Cirilo was no longer an appointment setter, and instead was responsible for fielding Victim complaints and dealing with chargebacks – a role that undoubtedly revealed that CDC/Alliance was engaged in the same fraudulent scheme at issue in *Ketabchi*. Following the January 2019 search, Cirilo and Larkin remotely deleted the data on their respective cellphones before those cellphones were accessed by HSI, thereby destroying any evidence of their conduct that might be on those devices. Shortly after HSI discovered this, a cooperating witness (the "CW") made a consensual recording of Cirilo and Larkin in which both acknowledged they had deleted the contents of their phones and instructed the CW how the CW could do the same.

Cirilo was arrested on November 20, 2019. Cirilo pleaded guilty to wire fraud conspiracy pursuant to the Plea Agreement in January 2021.

### B. The PSR and the Stipulated Guidelines Range

As set forth in the PSR, the Probation Office calculated the applicable Guidelines Range to be 57 to 71 months, primarily based on its determination that Cirilo should not receive acceptance of responsibility points given her obstruction of justice. (PSR ¶ 72). As set forth in the Plea Agreement, and for the same reasons articulated in the defense submission, the Stipulated Guidelines Range of 41 to 51 months is the applicable Guidelines Range.

### C. Defense Submission

The defendant requests this Court sentence her to time served – a significant downward variance from even the Stipulated Guidelines Range – based upon, among other things, her lack of criminal history, her personal family circumstances, and her limited involvement in the offense.

## II.    Applicable Law

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005).  Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005).  The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).  In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered.  Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two.  That sub-paragraph sets forth the purposes as:

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure.  *See Crosby*, 397 F.3d at 103.  First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id*. at 112.  Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*.  Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id*.

at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

## III. The 3553(a) Factors Support a Sentence Below the Stipulated Guidelines Range in this Case

A sentence below the Stipulated Guidelines Range would be sufficient and not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Such a sentence would also afford adequate deterrence to criminal conduct and would avoid unwarranted sentencing disparities among similarly situated defendants.

The defendant participated in a widespread and sophisticated scheme in which Victims all over the country were convinced to invest their entire life savings, drain their retirement funds, and incur tens of thousands of dollars in credit card debt based on the defendants' false promises that the Victims would earn money through an "online business" created and managed by the defendant's co-conspirators. In fact, there were no such businesses and the Victims never earned the money they were promised. While the defendant's participation in the charged crime was limited in time and scope, she was undoubtedly aware of the seriousness of the scheme after her home was searched in 2017, and after working for several years with individuals who were prosecuted for and convicted of fraud. Instead of finding another way to earn money in 2018, she took on more responsibility at CDC/Alliance, handling Victim complaints and dealing with chargebacks.

While this Court has imposed sentences below the applicable Guidelines Range for several defendants in the related *Ketabchi* case (including Thomas O'Reilly who received 366 days' imprisonment and Shahram Ketabchi who received a sentence of 3 months' imprisonment), the Court has uniformly imposed sentences of imprisonment. The same result is warranted here, where the defendant not only participated in the telemarketing scheme after she was aware that others were prosecuted criminally for it, but she actively participated in destroying the evidence of her role in the scheme. Such a sentence would promote respect for the law and afford adequate deterrence to others considering engaging in criminal conduct.

### IV. Conclusion

In light of the foregoing, a sentence below the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the aims of sentencing in this case.

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By: _____
Kiersten A. Fletcher
Robert B. Sobelman
Sheb Swett
Assistant United States Attorneys
(212) 637-2238/2616/

Cc: Counsel of Record (by ECF)

Rev. 07.20.2016